# STATE v. CARRIE A. FOSTER McCOY.[1]

November 18, 1910.

Nos. 16,831—(35).

**New trial — evidence inadmissible.**

> The defendant was convicted of an assault in the second degree, and appealed from the judgment. *Held*, that the defendant, by reason of the admission of evidence against her which was wholly foreign to the issue and prejudicial to her substantial rights, is entitled to a new trial.

Defendant was convicted in the district court for Wright county of the crime of assault in the second degree and sentenced, Giddings, J., to six months in the state prison at Stillwater. From the judgment entered therein, she appealed. Reversed and new trial granted.

*W. H. Cutting,* for appellant.

*George T. Simpson,* Attorney General, and *J. J. Woolley,* County Attorney, for the State.

START, C. J.

On June 15, 1910, the defendant was convicted in the district court for the county of Wright of an assault in the second degree, and upon a verdict of guilty was sentenced to imprisonment in the state prison at Stillwater for the term of six months. She appealed from the judgment.

It appears from the record that prior to February 4, 1910, the defendant and complaining witness were husband and wife, and that on the day named she was granted a divorce from him on the ground of his cruel and inhuman treatment of her. He was personally served with the summons and complaint in the divorce action on August 27, 1909, but did not answer. Pending the action the parties entered into an agreement as to property interest, whereby she was to have

[1] Reported in 128 N. W. 465.

the right to occupy their homestead, the title to which was in him, until April 1, 1910. The complaining witness, on March 3, 1910, went to the home of the defendant for the alleged purpose of getting some things he had left there, when a quarrel arose which resulted in her shooting and injuring him with a revolver. The indictment in this case was based on this act. The defendant on the trial admitted the shooting, and her defense was self-defense.

The complaining witness' testimony was to the effect following: When I went into the house a young man named McCoy was there, sitting on one side of the window and the defendant on the other. I told him he had no business there, and to leave. I started for him, and threw him out of the house. I then stepped upon the porch to go into the house. The defendant ordered me to leave. I didn't pay any attention to that, and went into the house. I was fighting mad, not at her, but at McCoy. She told me to leave, or she would shoot me. I did not leave. She then went into a bedroom, got a revolver, and, holding it in front of her, again told me to leave the house, or she would shoot me. I then grabbed for the revolver, and tried to disarm her, and she shot me. She told me two or three times to leave, before shooting. Before she got the revolver, she told me she had her divorce. I did not know it until she told me.

The defendant's testimony as to what took place was substantially as follows: When he started for McCoy, I stepped between them and said to him "McCoy has as much right here as you have" and told him to go out. He then took me by the shoulders and threw me to one side. I telephoned for the marshal, when he and McCoy were fighting outside. When he came into the house again, he appeared to be just crazy mad and ugly. He came toward me, and I ordered him out of the house. I told him several times to go away and let me alone; if he did not, I would shoot him. I got the revolver, and again told him to go away. I stepped back, and he came up, and grabbed hold of me, and threw me to the floor. I fell on my knees. I don't just know what I did then, but I kept telling him to go away and let me alone; and the first thing I knew the revolver went off, and he said I had shot him. He threatened to kill me on several occasions prior to this time.

No other witnesses testified as to what occurred at the time of the

shooting. The defendant and McCoy were afterwards married to each other, and before the trial of the case. She was forty-five and he twenty years of age. It is clear from the record that the important question for the consideration of the jury was: Which one of the witnesses told the truth? The credibility of the witnesses was a question for the jury, and if no errors occurred on the trial which were prejudicial to the substantial rights of the defendant the verdict cannot be disturbed.

The state at the outset of its case, and before giving any evidence as to the alleged assault gave evidence, over the objections and exceptions of the defendant, of an alleged transaction between the complaining witness and McCoy, which occurred more than six months before the assault, and as to which he testified as follows: "I went over to the creamery to get some butter, and when I came back he (McCoy) was standing on the porch steps talking with my wife. I came up and asked him what he was doing there, and he made some remark, I don't know what it was now, and then I slapped his face, kicked him a couple of times, and told him to get off from my place and not to come back there again. Q. Why did you say to him 'Get off the porch and not come back there again?' A. Because I thought he had no business hanging around my place." This testimony was absolutely immaterial to the issue to be tried, and manifestly prejudicial to the rights of the defendant. It was an attempt to discredit the defendant, and to place the complaining witness in the position of a wronged husband.

The witness was further permitted, over the objections and exceptions of the defendant, to testify in effect that he sought a reconciliation with his wife after the divorce action was begun, that he did not answer in that action, because they could not live together, and he thought it best to separate and have no more trouble; and, further, that he tried to have the prosecution of the defendant dropped.

Other and similar immaterial evidence was received over the defendant's objections. She was required to answer questions on her cross-examination which had no relevancy to the issue. She was asked the following questions: "Did you want to marry McCoy in order to have protection, some one to protect you?" "When did you

first get struck on him?" "When did he first pop the question to you?" The defendant duly objected to these questions, and others along the same line; but her objections were overruled.

The extent to which a party may be interrogated as to matters not relevant to the issue, for the purpose of affecting his credibility, rests in the sound discretion of the trial court, which will not be interfered with, except where there is a clear abuse of the discretion. Malone v. Stephenson, 94 Minn. 222, 102 N. W. 372. We are not prepared to say that the court abused its discretion in this respect; but it is proper to consider the character of the defendant's cross-examination in connection with the evidence which was improperly received against her. A careful consideration of the entire record has led us to the conclusion that the defendant is entitled to a new trial, by reason of the admission against her of the evidence wholly foreign to the issue which was clearly prejudicial to her substantial rights.

Judgment reversed and a new trial granted.

Jaggard, J. (dissenting.)

I dissent. The guilt of the defendant was clearly established. Among other things one Owen Groves testified that he had talked with defendant in regard to the trouble she had had, and she said Foster came into the house raising the devil, and she had ordered him off, and he did not go. Then she said, "I shot at him a couple of times, but I don't know whether I hit him or not, and don't give a damn." The alleged errors in relation to evidence must be considered in the light of that strong proof of guilt. The evidence concerned one McCoy, whom Foster found in the house with his former wife, and whom he then proceeded to thrash. To my mind the court was justified in allowing the prosecutor to show the previous relations between the defendant and McCoy, and Foster's connection with that intimacy. The indelicate and infelicitous questions referred to in the majority opinion did not involve substantial error.